UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

BRIA BLACKMON,

        Petitioner,
v.                                                                            Case No. 19-11003

SHAWN BREWER,

        Respondent.
_____/

**OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF
HABEAS CORPUS AND GRANTING A CERTIFICATE OF APPEALABILITY**

Petitioner Bria Blackmon, an inmate at the Women's Huron Valley Correctional Facility in Ypsilanti, Michigan, filed an amended petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254. She is serving a life sentence for first-degree, premeditated murder, Mich. Comp. Laws § 750.316(1)(a), and lesser terms for armed robbery, Mich. Comp. Laws § 750.529, conspiracy to commit armed robbery, Mich. Comp. Laws § 750.157a; Mich. Comp. Laws § 750.529, and illegal use of financial transaction device, Mich. Comp. Laws § 750.157n.

Petitioner's sole claim concerns her trial attorney's failure to move for a separate trial from that of her co-defendant. The Michigan Court of Appeals was the last state court to adjudicate this claim on the merits. It agreed with Petitioner that trial counsel's performance was deficient, but it concluded that the deficient performance did not prejudice Petitioner. Because the state court's conclusion on prejudice was objectively reasonable and is entitled to deference, the court will deny the amended petition.

## I.  BACKGROUND

### A.  The State-Court Proceedings

Petitioner was charged in Macomb County, Michigan with first-degree premeditated murder, first-degree felony murder, armed robbery, conspiracy to commit armed robbery, and illegal use of a financial transaction device.  Petitioner and her half-brother, Demonte Easterling, were tried before a single jury in Macomb County Circuit Court.  The state appellate court accurately summarized the evidence against the two defendants as follows:

> Defendants' convictions arise from the robbery and beating death of Michael Scott Freeland at his home in Sterling Heights, Michigan.  Freeland had posted an Internet advertisement seeking a submissive woman under the age of 30 who was willing to have his children.  Blackmon responded to the advertisement and began a relationship with Freeland.  Early in the morning on March 27, 2015, about a week after Blackmon and Freeland began their relationship, Blackmon and Easterling went to Freeland's home. Later that morning, authorities discovered Freeland's body inside his house after a neighbor reported a fire at the house.
>
> An autopsy revealed that Freeland had several blunt force injuries to his face and head, including lacerations to his scalp and face, bruising on his scalp and face, multiple skull fractures, and injury to his brain.  He also had defensive wounds on his right forearm and hand.  The cause of death was blunt force trauma to the head.
>
> The prosecution's theory at trial was that both defendants beat Freeland, intending to kill and rob him.  A few days before the offense, Blackmon had tried to recruit a friend to kill an acquaintance.  Cell phone records showed that both defendants were in the area of Freeland's home on the morning of March 27, and surveillance recordings captured Blackmon purchasing gasoline at a Sunoco station and purchasing a computer tablet at a Meijer store with Freeland's credit card. Other attempted purchases by Blackmon using Freeland's credit card were denied.  A search of Blackmon's vehicle led to the discovery of a jacket with Freeland's blood and DNA on it. Freeland had a medical marijuana card, and a jar of marijuana was also discovered inside Blackmon's vehicle.  Several of Freeland's credit cards and pieces of identification were discovered during a search of Blackmon's home.

> Both defendants gave multiple statements to the police. Blackmon initially admitted being at Freeland's home, and admitted striking him with lamp and a baseball bat after an argument, but claimed that he was alive and responsive when she left. In a second statement, she again admitted hitting Freeland with a bat and a lamp after an argument, and also admitted taking his wallet. Easterling first told the police that he went with Blackmon to Freeland's house to buy marijuana, but denied being involved in any plan to assault or rob Freeland. In a second statement, Easterling told the police that he punched Freeland and knocked him to the floor, and then took a laptop computer from his house. Easterling said that, after leaving the house, he had his girlfriend pick him up and he threw a dumbbell out the car window while driving along I–75. The police later found two dumbbells along I–75 that contained Freeland's DNA. Easterling testified at trial and denied assaulting or robbing Freeland. He also denied telling the police that he assaulted or robbed Freeland.

*People v. Blackmon*, No. 332644, 2017 WL 5759952, at *1-*2 (Mich. Ct. App. Nov. 28, 2017).

Petitioner did not testify or present any witnesses. Her defense was that the victim died from smoke inhalation during the fire at his house[1] and that there was no conclusive evidence supporting the charges against her. *See* 2/16/16 Trial Tr. (ECF No. 7-12, PageID.834-46).

On February 17, 2016, the jury found Petitioner guilty, as charged, and on April 6, 2016, the trial court sentenced Petitioner to life imprisonment for the murder. The trial court also sentenced Petitioner to concurrent terms of 225 to 480 months (eighteen years, 9 months, to 40 years) for the armed robbery and conspiracy and 32 to 48

---

[1] An expert on the cause and origin of fires testified that it was a smoldering fire and that its cause was undetermined. *See* 2/11/16 Trial Tr. (ECF No. 7-10, PageID.439-41). The medical examiner testified that the victim had a small amount of black particulate matter in his airway and a very low level of carbon monoxide in his body, both of which were consistent with having breathed in smoke from the fire for a short time before he died. But the medical examiner opined that the cause of death was injuries to the victim's skull and brain due to blunt impacts to the head. *See id.* at PageID.546-50.

months (2 years, eight months, to four years) for the illegal use of a financial transaction device.  See 4/6/14 Sentencing Tr. (ECF No. 7-14, PageID.1009-10).

In an appeal of right, Petitioner argued through counsel that:  (1) she was denied effective assistance of trial counsel due to counsel's acts, omissions, and mistakes, including counsel's failure to move to suppress her statements to the police and failure to move either for severance of the two defendants' trial or to bar the introduction of her co-defendant's statements and testimony; (2) the trial court abused its discretion by failing to dismiss the case on its own motion for a violation of Petitioner's right to a speedy trial; (3) her convictions for premeditated and felony murder for a single homicide violated her double-jeopardy rights; and (4) the admission of gruesome autopsy photographs of the deceased victim violated her right to a fair trial.  See Defendant-Appellant's Brief on Appeal (ECF No. 7-15, PageID.1071-73, 1081-82).

The Michigan Court of Appeals affirmed Petitioner's convictions, but it remanded her case for modification of the judgment of sentence to show a single conviction and sentence for first-degree murder, supported by alternate theories.  See Blackmon, 2017 WL 5759952 at *1, *10.  Petitioner filed a *pro se* application for leave to appeal in the Michigan Supreme Court, which denied leave to appeal on May 29, 2018.  See People v. Blackmon, 501 Mich. 1082; 911 N.W.2d 701 (2018).

### B.  The Habeas Petition, Amended Petition, and Responses

On April 4, 2019, Petitioner filed a *pro se* petition for the writ of habeas corpus, claiming that:  (1) trial counsel's serious acts, omissions, and mistakes deprived her of her Sixth Amendment right to effective assistance of counsel; (2) the trial court abused its discretion by failing to dismiss the case on its own motion for a violation of

4

Petitioner's right to a speedy and fair trial; and (3) her convictions for premeditated murder and felony murder for a single homicide violated her right not to be placed in double jeopardy. See Pet. (ECF No. 1, PageID.5, 7-8). Respondent argued in an answer to the petition that Petitioner's ineffectiveness claim lacked merit and was reasonably rejected by the state appellate court, that the speedy trial claim was procedurally defaulted, and that the double-jeopardy claim was moot because the Michigan Court of Appeals granted relief on the claim. See Answer in Opp'n to Pet. (ECF No. 6, PageID.26-27).

Petitioner subsequently retained counsel who moved to hold this case in abeyance while he reviewed the record and had an opportunity to supplement the *pro se* pleadings. See Mot. (ECF No. 9). The court construed the motion as a motion to amend and then granted the motion and set deadlines for filing an amended petition and response. See Op. and Order (ECF No. 10).

Petitioner subsequently filed an amended petition through counsel. She claims that the state court made unreasonable findings of fact and issued an objectively unreasonable decision in holding that trial counsel's failure to move for a separate trial was not prejudicial. See Am. Pet. and Brief in Support (ECF No. 11, PageID.1240, 1261).

Respondent filed an answer in opposition to the amended petition, claiming that trial counsel's performance was neither deficient, nor prejudicial. See Answer in Opp'n to Pet. (ECF No. 12, PageID.1281). Petitioner replied that the only issue is whether the state court's finding – that trial counsel's deficient performance was not prejudicial -- was an objectively unreasonable application of clearly established law or an

5

unreasonable determination of the facts.  *See* Petitioner's Reply (ECF No. 14, PageID.1330).  Petitioner maintains that trial counsel's performance was prejudicial because the joint trial prevented her from advancing the defense that her co-defendant murdered the victim.  *See id*. at PageID.1331.

## II.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires prisoners who challenge "a matter 'adjudicated on the merits in State court' to show that the relevant state court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.' "  *Wilson v. Sellers*, 138 S. Ct. 1188, 1191 (2018) (quoting 28 U.S.C. § 2254(d)).  Simply stated, "[f]ederal habeas courts must defer to reasonable state-court decisions[.]"  *Dunn v. Reeves*, 141 S. Ct. 2405, 2407 (2021) (citing 28 U.S.C. § 2254(d)).  "AEDPA . . . imposes a 'highly deferential standard for evaluating state-court rulings,' *Lindh v. Murphy,* 521 U.S. 320, 333, n. 7, 117 S. Ct. 2059, 138 L.Ed.2d 481 (1997), and 'demands that state-court decisions be given the benefit of the doubt,' *Woodford v. Visciotti,* 537 U.S. 19, 24, 123 S. Ct. 357, 154 L.Ed.2d 279 (2002) (*per curiam* )."  *Renico v. Lett*, 559 U.S. 766, 773 (2010).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  "Only an 'objectively unreasonable' mistake, . . . one 'so lacking in justification that there was an error well understood and comprehended

in existing law beyond any possibility for fairminded disagreement,' slips through the needle's eye of § 2254." *Saulsberry v. Lee*, 937 F.3d 644, 648 (6th Cir. 2019) (quoting *White v. Woodall*, 572 U.S. 415, 419 (2014), then *Richter*, 562 U.S. at 103). "That's a 'high bar' to relief, which 'is intentionally difficult to meet.'" *Kendrick v. Parris,* 989 F.3d 459, 469 (6th Cir.) (quoting *Woods v. Donald*, 575 U.S. 312, 316 (2015)), *cert. denied*, 142 S. Ct. 483 (2021).

### III. DISCUSSION

Petitioner contends that her joint trial with Easterling was fundamentally unfair, that it prevented her from advancing a defense that Easterling murdered the victim, and that all the circumstances which make a joint trial unfair were present in her case. *See* Am. Pet. (ECF No. 11-1, PageID.1264-65); Reply to Respondent's Answer to Am. Pet. (ECF No. 14, PageID.1331-33). Petitioner relies on the Supreme Court's decision in *Zafiro v. United* States, 506 U.S. 534 (1993), where the Supreme Court stated that,

> when defendants properly have been joined under [Fed. R. Crim. P.] Rule 8(b), a district court should grant a severance under [Fed. R. Crim. P.] 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence. Such a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant. For example, evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty. When many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened. See *Kotteakos v. United States,* 328 U.S. 750, 774-775, 66 S.Ct. 1239, 1252-1253, 90 L.Ed. 1557 (1946). Evidence that is probative of a defendant's guilt but technically admissible only against a codefendant also might present a risk of prejudice. See *Bruton v. United States,* 391 U.S. 123, 88 S. Ct. 1620, 20 L.Ed.2d 476 (1968). Conversely, a defendant might suffer prejudice if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial. See, *e.g., Tifford v. Wainwright,* 588 F.2d 954 (CA5 1979) (*per curiam*). The risk of prejudice will vary with the facts in

7

> each case, and district courts may find prejudice in situations not discussed here. When the risk of prejudice is high, a district court is more likely to determine that separate trials are necessary, but, as we indicated in *Richardson v. Marsh,* less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice. See 481 U.S., at 211, 107 S. Ct., at 1709.

*Id*. at 539.

Importantly, the issue is not whether the state trial court erred by trying the two defendants together. Rather, the issues are whether trial counsel's failure to request a separate trial amounted to constitutionally ineffective assistance and whether the state appellate court's decision about trial counsel involved an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts.

### A. Clearly Established Federal Law

The clearly established federal law for an ineffective-assistance-of-counsel claim is *Strickland v. Washington*, 466 U.S. 668 (1984). *Cullen v. Pinholster,* 563 U.S. 170, 189 (2011). To establish that trial counsel's assistance was so defective as to require reversal of a conviction, a convicted defendant must show that his or her attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id*.

"Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. Because of the difficulties inherent in evaluating an attorney's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the

8

presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Id*. (end citation omitted).

A deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.  "[T]he defendant must show that counsel's representation fell below an objective standard of reasonableness."  *Id*. at 688.  There must be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  "This does not require a showing that counsel's actions 'more likely than not altered the outcome,' " but "[t]he likelihood of a different result must be substantial, not just conceivable."  *Richter*, 562 U.S. at 111-12 (quoting *Strickland*, 466 U.S. at 693).

When a state court rejects a defendant's ineffectiveness claim, a habeas court owes deference to counsel *and* the state court.  *Reeves*, 141 S. Ct. at 2410.  In other words,

> [w]hen the claim at issue is one for ineffective assistance of counsel . . . , AEDPA review is "doubly deferential," *Cullen v. Pinholster,* 563 U.S. 170, 190, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011), because counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," *Burt v. Titlow,* 571 U.S. ——, ——, 134 S.Ct. 10, 17, 187 L.Ed.2d 348 (2013) (quoting *Strickland v. Washington,* 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); internal quotation marks omitted). In such circumstances, federal courts are to afford "both the state court and the defense attorney the benefit of the doubt." *Burt, supra,* at ——, 134 S.Ct., at 13.

*Woods v. Etherton*, 578 U.S. 113, 117 (2016) (*per curiam* opinion).

### B.  Deficient Performance

The trial court and defense attorneys in Petitioner and Easterling's cases discussed the issue of separate trials before trial because both defendants gave

9

incriminating statements to the police.  *See* 7/27/15 Arraignment (ECF No. 7-2, PageID.106-07)**;** 9/9/15 Pretrial (ECF No. 7-3, PageID.112-14); 10/13/15 Pretrial (ECF No. 7-5, PageID.129-30).  Ultimately, it was decided that there would be one trial with one jury, but that the defendants' statements to the police would be redacted and the officer in charge of the case would be instructed to testify only about what each defendant had said regarding himself or herself during their interviews with the officer.  *See* 2/9/16 Trial Tr. (ECF No. 7-8, PageID.150).

The Michigan Court of Appeals determined on direct appeal that trial counsel should have moved to sever the trials and that the failure to do so amounted to deficient performance.  In reaching this conclusion, the Court of Appeals stated that, while Petitioner's Sixth Amendment right to confront the witnesses against her was alleviated when co-defendant Easterling testified and was subject to cross-examination, there were other aspects of the joint trial that potentially raised issues of fairness:

> Specifically, at trial Detective Finkbeiner testified about out-of-court statements Easterling made to police that implicated Blackmon in the murder while tending to absolve Easterling.  While Finkbeiner's direct testimony was redacted, it was clearly implied that Blackmon delivered the first blow to the victim.  Furthermore, Easterling's defense was that he left the victim's home while Blackmon killed the victim.  Easterling testified that he left the house while Blackmon stayed inside with the victim for more than 10 minutes and he stated that Blackmon sent him a text message asking him to come back inside.

*Blackmon*, 2017 WL 5759952, at *3.  Finkbeiner, moreover, testified as a rebuttal witness and provided additional information about Easterling's statement to him.

> Specifically, Finkbeiner testified that Easterling informed police that Blackmon wanted to assault the victim, asked him if he had a gun, and gave him a brick to use to assault the victim.  Easterling stated that he and defendant went to the victim's house, and Blackmon refused his requests to leave, and instead indicated that "this is going to happen."  Easterling described how he heard the victim state, "ouch," and saw Blackmon and the

>victim "wrapped up;" Easterling admitted punching the victim twice, but stated that Blackmon kept hitting the victim "over and over" and that Blackmon used a dumbbell while assaulting the victim.

*Id.*, 2017 WL 5759952, at *4.

The Court of Appeals concluded that Easterling's out-of-court statements to Detective Finkbeiner were detrimental to Petitioner, and because Easterling's defense was to shift the blame to Petitioner, trial counsel should have moved to sever the trials and her failure to do so amounted to deficient performance. *Id*. The Court of Appeals, nevertheless, determined that trial counsel's deficient performance was not prejudicial.

"Federal courts may not disturb the judgments of state courts unless '*each* ground supporting the state court decision is examined and found to be unreasonable.' " *Shinn v. Kayer*, 141 S. Ct. 517, 524 (2020) (quoting *Wetzel v. Lambert*, 565 U.S. 520, 525 (2012) (*per curiam*)) (emphasis in original). Thus, if a fairminded jurist could agree with the state appellate court's prejudice holding, the reasonableness of its deficient-performance holding is "beside the point." *See id.* (quoting *Lambert,* 565 U.S. at 524). The court, therefore, proceeds to determine whether trial counsel's failure to move for a separate trial prejudiced Petitioner's defense and whether the state appellate court's finding of no prejudice was an unreasonable application of clearly established federal law.

## C. Prejudice

The Michigan Court of Appeals determined that trial counsel's deficient performance did not prejudice Petitioner because there was substantial evidence of Petitioner's guilt. In reaching this conclusion, the Court of Appeals pointed to the following facts:

11

● Jason Hise testified that at about the time of the murder, Blackmon solicited his help in killing a man and stealing his money, electronics, and marijuana. Blackmon later told Hise that she had "tooken [sic] care of it" when Hise asked about the man she wanted killed.

● Other evidence showed that the victim had posted an ad on Craigslist and that Blackmon responded to the ad and Blackmon's contact information was on the victim's phone. Blackmon's phone had messages on it to Easterling stating "we doing this," and she referenced hitting someone and looking on laptops to acquire bank information. Other text messages showed that Blackmon tried to sell marijuana after the murder and there were messages where Blackmon appeared to refer to the offense.

● Police found items in Blackmon's home that were purchased at a Meijer early on the morning that the victim's body was discovered. There was also evidence that the victim's credit card was used between 3:00 and 3:30 a.m. at a Meijer and Blackmon appeared on a store surveillance camera at that time.

● Other evidence showed that Blackmon's vehicle appeared on a gas station surveillance camera where the victim's credit card was used on the same morning that the victim was murdered.

● Police also found the victim's passport, medical marijuana card, credit card and driver's license at Blackmon's residence.

● The evidence also showed that defendant's vehicle had blood on the door handle and there was blood on a jacket inside the vehicle that contained the victim's DNA.

● Moreover, Blackmon admitted to police that she responded to the victim's personal ad, that she had recently started a relationship with him, and that she wanted to be "spoiled" by the victim. Blackmon also admitted to police that she hit the victim on the head with a lamp and a baseball bat and that she kicked him in the groin.

*Blackmon*, 2017 WL 5759952, at *4 (format altered).

The Michigan Court of Appeals concluded from these facts that the result of the proceeding would not have been different absent trial counsel's deficient performance. This was the correct standard, and given the strength of the evidence against Petitioner, the court agrees there is not a substantial likelihood that the outcome of the trial would

have been different if trial counsel had successfully moved for a separate trial. Therefore, even if the joint trial prevented Petitioner from arguing that Easterling committed the murder, trial counsel's performance did not prejudice Petitioner, and the state appellate court's conclusion prejudice holding "was not so obviously wrong as to be 'beyond any possibility for fairminded disagreement.' " *Kayer*, 141 S. Ct. at 526 (quoting *Richter*, 562 U.S. at 103).

Given the doubly deferential judicial review that applies to Petitioner's claims about trial counsel and the state court's decision, the court finds that Petitioner's claims fail. The "stringency of federal habeas review" requires the court to affirm the state appellate court's decision not to find prejudice. *Martin v. Haas*, 731 F. App'x 443, 458 (6th Cir. 2018) (citing *Richter*, 562 U.S. at 105).

### D. The State Appellate Court's Findings of Fact

Petitioner's remaining argument is that the Michigan Court of Appeals made unreasonable findings of fact in its decision. The state court's findings of fact, however, are supported by the record: Indeed, the state court's findings are supported by the following:

● 2/11/16 Trial Tr. (ECF No. 7-10, PageID.472-78) (Jason Hise's testimony regarding Petitioner's text message to him that she wanted a guy dead and decomposed in the ground, that Petitioner tried to persuade him to do this with her, that she asked for his gun, and that, a few days later when he inquired about the man, Petitioner stated that she had taken care of it);

● *Id*. at PageID.494-97 (Kevin Miller's testimony about the victim's Craigslist posting and Petitioner's response to the posting); *id.* at PageID.505-07 (Miller's

testimony about Petitioner's text messages to Easterling about them "doing this," about Easterling looking for bank information on the laptops, and about him selling the "weed" for her); *id*. at PageID.514-15 (Miller's testimony about Petitioner's text messages to Hise, stating that the man had a pot tree, that Hise had to go there and kill the man, that she wanted him dead and decomposed, that she wanted Hise to take the victim's money, weed, laptops, and other things, that she would "clean up" afterward, and that Hise would get his "cut");

● *Id*. at PageID.576-85 (Monica Barylski's testimony that the victim's blood and Petitioner's DNA were present on the jacket that was submitted to Barylski for analysis, that the victim's blood was present on the driver's interior door handle of a vehicle and on one hand weight, and that the victim's blood and cellular material were present on the other hand weight);

● *Id.* at PageID.593-99 (Detective Robert Kovalcik's testimony that the victim's passport card, theatre cards, marijuana card, credit and debit cards, Social Security card, and driver's license were found in Petitioner's home; *id.* at PageID.592-93, 597-98 (Kovalcik's testimony that the police also found a box for a Galaxy Tab 4 in Petitioner's home and that the police had a Meijer receipt and video from Meijer showing that Petitioner purchased the item with the victim's credit card at 3:55 a.m. on the day of the crime);

● 2/12/16 Trial Tr. (ECF No. 7-11, PageID.630-32, 635-42) (Detective Chad Finkbeiner's testimony about how the police linked Petitioner to the use of the victim's credit card at a Sunoco gas station and a Meijer store between 3:00 and 4:00 a.m. on March 27, 2015); and

14

- *Id*. at PageID.646-51, 655-60 (Detective Finkbeiner's testimony that Petitioner admitted during an interview with him that she responded to the victim's Craigslist posting because she wanted to be spoiled, even though she had no intention of having a child with the victim; that one day she had an argument with the victim and hit him on the head with a lamp, and as he was trying to get up, she hit him with a bat three or four times; that she left the house while the victim was still responsive; that she later returned to the victim's home and noticed that his house was on fire; and that she then went to Meijer and bought a Galaxy 4 with the victim's credit card).

Although Petitioner alleges that the forensic scientist's analysis of DNA and blood was ambiguous, the basis for this conclusion is that the scientist was unable to identify two people, besides the victim, who contributed material on the victim's fingernails. *See* 2/11/16 Trial Tr. (ECF No. 7-10, PageID.575-76). There was nothing ambiguous about the scientist's additional conclusions that the victim's blood was present on a jacket found in Petitioner's car and on the driver's side of the interior of her car or that Petitioner was the major donor of DNA material taken from a swab of the jacket. *See id*. at PageID.576-79. In fact, Petitioner admits that the victim's blood was found on the interior of her car. *See* Am. Pet. (ECF No. 11-1, PageID.1268). Thus, the state court's determination of the facts regarding the scientific evidence was not unreasonable.

Petitioner also claims that the Michigan Court of Appeals made an unreasonable determination of the facts when it relied on Petitioner's text message to Jason Hise that she had taken care of the matter. According to Petitioner, what she really said to Hise was that she *and her brother* had taken care of the matter. *See id.* at PageID.1268-69 (emphasis added). Taken in context, the text message was an implicit admission that

15

Petitioner participated in killing the victim. The Court of Appeals, therefore, did not make an unreasonable finding of fact when it stated that Petitioner admitted to taking care of the matter. Petitioner's challenges to the state court's findings of fact fail.

### IV.  CONCLUSION

For the reasons given above,

IT IS ORDERED that the amended petition for a writ of habeas corpus (ECF No. 11) is DENIED.

IT IS FURTHER ORDERED that a certificate of appealability may issue because reasonable jurists could conclude that Petitioner's claim deserves encouragement to proceed further. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

                                                  s/Robert H. Cleland
                                                  ROBERT H. CLELAND
                                                  UNITED STATES DISTRICT JUDGE

Dated:  June 21, 2022

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, June 21, 2022, by electronic and/or ordinary mail.

                                                  s/Lisa G. Wagner
                                                  Case Manager and Deputy Clerk
                                                  (810) 292-6522